782 So.2d 136 (2001)
STATE of Louisiana
v.
Quincy BROWN.
No. 2001-K-0230.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 2001.
*137 Harry F. Connick, District Attorney, Jacqueline F. Maloney, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Respondent.
Clive Stafford Smith, Louisiana Crisis Assistance Center, New Orleans, LA, Counsel for Defendant/Relator.
Court composed of Judge BAGNERIS, Judge KIRBY, and Judge GORBATY.
*138 BAGNERIS, Judge.

STATEMENT OF THE CASE
On May 6, 1999 the defendant-relator was indicted on one count of first-degree murder. He was arraigned and entered a not guilty plea on May 11, 1999. The case has proceeded with pretrial motion hearings, including proceedings on October 4, 2000 and November 20, 2000 relating to a notice of intent to introduce evidence of other crimes, pursuant to La. C.E. Art. 404(B). On the latter date, the trial court held that the State could introduce the evidence relating to two of the offenses for which the defendant is presently awaiting trial in the same section of court under case number 406-890. The defendant gave notice of intent to seek writs; the original return date of December 18, 2000 was twice timely extended.
On November 20, 2000, the court set a trial date of March 5, 2001. A review of the docket master indicates that, on December 11, 2000, the defendant filed a motion to quash the indictment, and on January 12, 2001, the State filed a motion to recuse one of the defense attorneys. The trial court set a status hearing for January 26th. On that date, the trial court removed counsel, Mr. Singer, and appointed Clive Stafford Smith, who is the attorney who filed this writ application, as new counsel. The defense was given until February 12, 2001 to file a writ from this action; the trial court denied a request for a stay order.

STATEMENT OF THE FACTS
The facts of the instant case can be gleaned from the police report and the testimony of Cynthia Dufrene, who testified at a motion to suppress identification hearing held on August 6, 1999. On March 11, 1999 at approximately 9:05 p.m., the victim, Daniel Barilleux, and Ms. Dufrene were driving in the victim's truck. They were attempting to buy drugs and had driven through the Fischer Project, under the Crescent City Connection, past a cemetery, to an area by an empty house and church. This location was later established to be the 1000 block of Verret Street.[1] They thought they heard a black male call "Danny," so the victim pulled the truck over. The person who yelled and another black male ran up to the truck. The man who yelled, and who Ms. Dufrene later identified in a photo line-up and in court as the defendant, was armed with a chrome handgun and said, "Give me your money." When the victim refused, the defendant fired one shot, striking the victim in the head. The victim was able to drive away, but crashed the truck in Gretna because of his injuries. The police were later able to recover a casing, which they believe indicate the weapon used was a .380 caliber.
In the notice of intent to use other crimes and supporting memorandum filed by the State, the State seeks to introduce evidence that, on February 7, 1999, the defendant attempted to commit an armed robbery of Leonard Jordan, Leon Robertson, and Terry Jynes at gunpoint as Mr. Jordan and the other men exited Mr. Jordan's vehicle. When Mr. Jordan refused to comply with the defendant's demands, the defendant shot him in the neck, attempting to kill him. The offense occurred at 4:50 a.m. at 2025 Hendee, which is on the Westbank. The second offense occurred on March 11, 1999 at 9:00 p.m. when the defendant robbed Wayne Matthews at gunpoint while Mr. Matthews was sitting in his car in the 1000 block of Verret, the *139 same block where the attempted robbery and murder of Daniel Barilleux occurred.
To support its notice of intent to use these other crimes, the State provided the trial court with police reports and the motion to suppress identification-hearing transcripts. As to the attempted robbery and attempted murder of Leonard Jordan, those supporting documents reflect that Mr. Jordan and Leon Robertson, in the company of a female named Claudia, arrived at 2025 Hendee Court in Mr. Jordan's van. According to the statement of Claudia as reflected in the police report, the two men exited the van and met with the third victim, Terry Jynes, and two unknown males in the breezeway. After approximately five minutes, one of the unknown men pulled out a handgun and fired five or six shots at the three victims. The two unknown men then ran away. Another witness, Rhonda Faggin, stated that she had passed through the breezeway and saw Jynes loitering. She went into her apartment, one unit from the breezeway. A couple of minutes later she heard gunshots. She looked out and saw two unknown black males running and then entering a blue and gray vehicle. Nothing in the police report indicates that a robbery had been attempted.
A review of the testimony of Leonard Jordan at the October 15, 1999 motion hearing reflects that Mr. Jordan was dropping Leon off at 2025 Hendee while Claudia stayed in the van; Mr. Jordan had to exit the van because the passenger side door stuck. As the two men were outside the vehicle, they were approached by two men who asked them to walk back to the breezeway. Mr. Jordan saw weapons; he also recognized the defendant, whom he knew, although the defendant had a bandanna over his lower face. According to Mr. Jordan, there was several minutes of conversation, then "things got out of hand," and Leon ran (10/15/99 Tr. 6). At that point there was gunfire. Mr. Jordan admitted that he had at least two or three drinks that night in addition to smoking marijuana; he may have had even more drinks. Notably, Mr. Jordan was adamant that there was no third man with him, although he finally stated that there was another man "walking pass going towards a cab or something" who got shot.
The police report further notes that at the scene Mr. Jordan attempted to provide the identity of the perpetrators but was unable to do so because of his injury. Neither of the other men shot would cooperate or give any information about the incident. There is nothing in the record now before this Court to indicate whether or not Mr. Jordan was able to identify or give any information about the second perpetrator. It appears that the defendant is not charged as to any of the other victims in this incident.
The other crime to be introduced is the armed robbery of Wayne Matthews. This incident occurred at approximately 9:00 p.m. in the 1000 block of Verret Street, although the police report reflects that the victim made the call about the carjacking from 901 Wagner Street at 1:00 a.m. According to the police report, Mr. Matthews was alone in his car on Verret when an unknown black male wearing a dark scarf over his face opened the front passenger door, got in, and produced an unknown type of handgun. The robber stated, "Give me your money," and Mr. Matthews replied that he did not have any. Mr. Matthews then parked his car. The robber told the victim to give him his wallet and get out of the car and run. Mr. Matthews did as instructed; one shot was fired in his direction as he ran. The robber then drove off east on Diana Street. The investigating officer and the victim went to the scene at Verret and Diana; *140 during this time, the victim told the officer that he just saw his car on Mardi Gras Blvd. The police were able to stop the stolen car, which was occupied by two men, Keith Cook and Dewitt Haynes. Haynes informed the police that he took the vehicle after he saw Mr. Matthews fleeing the area of the carjacking.[2] The victim later called the police and told them that the perpetrator was the defendant Quincy Brown, whom he had recognized because the defendant frequented the area. Mr. Matthews subsequently identified the defendant in a photo line-up.
The testimony of Mr. Matthews at the August 6, 1999 motion to suppress identification hearing differed somewhat from that reflected in the police report. He testified that he was driving down Verret Street to see some friends; when he did not see his friends on the porch of their residence, he drove past. Someone knocked on his car, so Mr. Matthews stopped because he believed he knew everyone in the neighborhood. The defendant jumped into the car with a handkerchief around his face; he also had a t-shirt wrapped around his hand. Mr. Matthews tried to talk to the defendant to keep him calm as he drove his car around the corner. The defendant told the victim to let him out of the car, but when the defendant exited, he told the victim, "By the way bitch, let me have it, give it up" while pointing the gun at the victim's face Mr. Matthews complied with the defendant's demand for his wallet. The defendant then turned the car off and told the victim to run. As he did so, the defendant "popped off one shot," but Mr. Matthews was not struck. During cross-examination, Mr. Matthews stated that the defendant never removed the mask/handkerchief, but that he knew it was the defendant from the beginning and had thought at first that the defendant was "playing."

DISCUSSION
In this writ application, the relator contends that the trial court erred when it ruled that the evidence of the offenses against Mr. Jordan and Mr. Matthews would be admissible at the first-degree murder trial. The relator also contends that the trial court erred when it ruled based only on the police reports and the motion to suppress identification-hearing transcripts. The relator avers that a full hearing with new testimony should have been conducted. Additionally, the relator argues that the State should be estopped from using the other crimes evidence because the State argued in case number 406-890 in its opposition to a motion to sever that the Jordan and Matthews offenses, in addition to other robberies, were separate and distinct.
Louisiana Code of Evidence Article 404B permits the use of other crimes evidence in certain circumstances for purposes other than to prove the character of the person. These purposes may include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. La. C.E. art. 404(B)(1) provides as follows:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparations, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction *141 that is the subject of the present proceeding.
In State v. Prieur, 277 So.2d 126 (La. 1973), the Supreme Court ruled that there must be clear and convincing evidence that the defendant committed the other crime before such evidence could be admissible. However, the Legislature subsequently enacted La. C.E. art. 1104 and repealed Article 1103, changing the State's burden of proof at the Prieur hearing to only a preponderance of the evidence standard as is required by the Federal courts. State v. Ross, 98-0283 (La.App. 4 Cir. 9/8/99), 743 So.2d 757; State v. Crawford, 95-1352 (La. App. 3rd Cir.4/3/96), 672 So.2d 197, writ denied 96-1126 (La.10/4/96), 679 So.2d 1379.
In the instant case, in the State's Prieur notice and supporting memo, it averred that the crimes are so distinctive as to be signature crimes, although it also stated that the evidence is relevant to show intent, preparation, and plan. At the November 20th hearing, the State agreed with defense counsel that it was relying upon the other crimes evidence as signature crimes to prove identity.
In State v. Evans, 99-1953 (La.9/17/99), 746 So.2d 1265, the defendant Evans allegedly shot and killed a convenience store owner while his codefendant Feneshia Blunt robbed the customers in the store. A few days later, in Jefferson Parish on Airline Hwy, Evans killed the Reverend John Thomas with the same gun Evans used to kill the storeowner; the shooting occurred after Rev. Thomas and Blunt, a prostitute, had sex. The defendants were arrested when they were found in possession of the car owned by Rev. Thomas. At the time of her arrest Blunt was in possession of the gun used to kill both the storeowner and Rev. Thomas. After the trial court held that the evidence of the Rev. Thomas murder, for which Evans had been convicted, was admissible in the prosecution for the murder of the convenience store owner, and this Court affirmed that ruling, the Louisiana Supreme Court reversed in part. The court discussed the use of other crimes evidence:
Matters, which are "logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses." State v. Constantine, 364 So.2d 1011, 1014 (La.1978). Evidence that during their investigation of relator for possession of the stolen car Jefferson Parish officers found only a few feet away from the parked vehicle, and from where relator was standing, a nine millimeter semiautomatic handgun taken from the victim of the New Orleans offense connects relator with that handgun and links him directly to the New Orleans offense. The evidence is therefore admissible at trial on the question of identity. La. C.E. art. 401 ("`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); State v. Kirkpatrick, 443 So.2d 546, 557 (La.1983) ("Any competent evidence tending to show the connexity between the defendant and the victim's stolen property is extremely relevant as to the proof of the robbery."); State v. Parker, 421 So.2d 834, 840 (La.1982) (evidence of murder weapon found in defendant's vehicle abandoned after a high-speed chase with the police "was relevant to show the jury how the defendant was associated with the .38 revolver allegedly used two weeks earlier in the [charged] robbery/murder."); State v. Donahue, 408 So.2d 1262, 1265 (La.1982) ("Evidence of the use of a stolen credit card is independently admissible to *142 prove that the user of the card was a principal in the robbery in which the credit card was taken."); State v. Scott, 320 So.2d 538, 540 (La.1975) ("The circumstances surrounding the department store theft by use of a credit card stolen in the robbery were independently admissible as relevantly tending to prove that the accused was a principal in the robbery as utilizing the proceeds thereof."). On the same rationale, evidence that the Jefferson Parish officers found on relator's co-perpetrator the .380 caliber handgun used to kill the owner of the convenience store in New Orleans is also relevant and admissible on the question of identity of the two perpetrators who committed that crime. To this extent, we affirm the ruling of the trial court.
On the other hand, evidence that relator used the .380 caliber handgun to shoot the victim-owner of the stolen car, during an unrelated "prostitution date" involving relator and his co-perpetrator, is not admissible at trial of the New Orleans offense. Prerequisite to the introduction of other crimes evidence is a showing by the state that the evidence "is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character of his propensity for bad behavior, and that it serves the actual purpose for which it is offered." State v. Prieur, 277 So.2d 126, 130 (La.1973). In the case before us, the two criminal episodes are not so peculiarly distinctive that logically they appear the work of one man or of the same team working in tandem systematically. See State v. Moore, 440 So.2d 134, 137 (La.1983) ("Evidence of other crimes may be admitted when the prior crime by the particular defendant is so distinctively similar to the charged crime (especially in terms of time, place and manner of commission) that one may reasonably infer that the same person was the perpetrator."); see also State v. Evans, 97-1030, pp. 4-7 (La. App. 5th Cir.4/15/98), 712 So.2d 941, 943-44 (finding error in the introduction of the New Orleans offense at the trial of relator for the Jefferson Parish crime because the two offenses "are not so similar as to produce a distinctive modus operandi."). To the extent that evidence of their arrests together in Jefferson Parish and of their close association with the two handguns involved in the New Orleans offense discloses the connection between relator and his co-perpetrator and the nature of their relationship, the probative value of further linking them through evidence of the Jefferson Parish shooting incident appears far outweighed by the danger that the evidence will "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 179, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).
Finally, while relator's willingness to use the .380 caliber handgun on other occasions may have some probative value on the question of his intent in the charged offense, we find no indication in the record that intent will be a matter genuinely contested at trial. According to the state's opposition filed here, relator shot the victim at the front door of the convenience store and then stripped from the body the nine-millimeter handgun the victim carried for his own protection, circumstances which appear to negate any claim of mistake or inadvertence. In the event that relator affirmatively contests intent at trial, the state may then resort on rebuttal to evidence of the Jefferson Parish shooting involving the same weapon. Prieur, 277 So.2d at 129 n. 2 ("If in the utterly unlikely *143 even the defendant had interjected such an issue, then only could the State conceivably have properly contended that such evidence was admissible in rebuttal to show knowledge or intent."). Evans, pp. 1-3, 746 So.2d 1265-66.
In its memorandum in support of its Prieur notice, the State gave the following recitation regarding the distinct nature of the offenses, which shows a modus operandi:
In each case the defendant victimized a middle-aged male whom he had known previously. In each case he initiated the conversation with the victim at night in an untraveled araea (sic) and demanded money. In each case he fired his weapon, a dark automatic, when they failed to fully cooperate. The victim was in or near his vehicle in each case when the defendant approached, and in at least the Leonard [Jordan] and the Barrilleaux case, the defendant was with another unidentified male at the time of the shooting.
However, a review of the police reports and testimony indicates, the crimes are not at all as similar and distinctive as described by the State, particularly with regard to the Leonard Jordan case. There, the crime occurred in the very early morning, not in the evening, over a month before the instant offense. The crime occurred in a breezeway of 2025 Hendee Court. The victims were not in their vehicle when approached by the defendant, but rather had parked and exited the van. There was no quick demand for valuables; instead the perpetrators apparently spoke with the victims for a few minutes. In fact, Mr. Jordan did not testify that there was an actual demand for money, a wallet, or other valuables; instead he stated that "it was like just they held us at gun point and walked us off," so he "knew pretty much what was going on." Instead of a single gunshot being fired by the defendant, several shots were fired apparently by two armed men.
We find that the shooting of Leonard Jordan and the murder of Daniel Barilleux are not so similar that they could be considered signature crimes so that the evidence of the Jordan case would be relevant to establish the defendant's identity as the person who killed Daniel Barilleux. Furthermore, it does not appear that this evidence would be relevant and admissible for any other purpose. As in Evans, the only arguable relevance would be if the defendant admitted to the involvement in the murder, but argued that the discharge of the weapon was accidental and not indicative of intent to kill. The fact that the defendant committed an attempted murder a month previously might tend to establish his familiarity with weapons, but such marginal relevance would appear to be outweighed by prejudice.
As to the robbery of Wayne Matthews, the facts of that crime are much closer to those of the instant offense. First, both offenses occurred in the 1000 block of Verret Street. Both occurred around 9:00 p.m. Both occurred on March 11, 1999. Both involved the perpetrator(s) approaching a vehicle in an attempt to rob the occupant(s). In both cases, a single gunshot was fired. Although there were apparently two men involved in the Barilleux murder and only one in the Matthews case, only the defendant is alleged to have fired a shot in the instant case. It is highly improbable that two different sets of robbers were working the 1000 block of Verret Street at approximately 9:00 p.m. on March 11th. Thus, the trial court correctly held that the evidence of the Matthews robbery should be admitted at the murder trial in this case.
*144 In addition to arguing that the Jordan and Matthews's offenses are not similar enough to the instant offense to be admissible, the relator argues that the trial court failed to conduct a full hearing. The relator does not cite a specific case, which sets forth the requirement that, actually states that the prosecution must present witnesses in a new hearing in order to meet its burden under Prieur.
In Prieur itself, the Louisiana Supreme Court gave prospective guidelines for the admissibility of other crimes evidence:
When the State intends to offer evidence of other criminal offenses under the exceptions outlined in R.S. 15:445 and 446 [Now La. C.E. art. 404(B)]:
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses, which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto. Prieur, 277 So.2d at 130 [Emphasis added].
Nowhere in these guidelines is there an explicit requirement that the State present live testimony at a hearing, although all the subsequent cases refer to a Prieur hearing. Instead, the State is only required to make a showing, which could certainly include live testimony, but may include police reports and prior transcripts as in the instant case. Because the showing by the State in this case is clearly insufficient as to the offense against Mr. Jordan, and clearly is so compelling with regard to the Matthews robbery, it does not appear that this matter should be remanded for additional testimony.
The other argument made by the relator is that the State should be estopped from introducing the other crimes evidence because it argued the crimes were separate and distinct in its successful opposition to a motion to sever the offenses in case number 406-890. The severance motion was denied by the trial court; this Court denied the defendant's writ application in an unpublished per curiam, State v. Quincy Brown, 00-0560 (La. App. 4 Cir. 5/3/00), 760 So.2d 1184, on the showing made because the trial court did not abuse its discretion. Judge Plotkin dissented, noting that the evidence of the four charges (one count of attempted murder and one count of simple robbery in addition to the Matthews and Jordan offenses) *145 would not be admissible as signature crimes under La. C.E. art. 404 and the defendant had shown prejudice.
After careful review of the record, we find that the offenses involving Matthews and Jordan are distinct and are not appropriate for admission as Prieur evidence as to each other, and evidence of the Jordan offense should not be admitted in the instant case. Therefore, we find that there is no reason for this Court to address whether the State should have been estopped from arguing that the Matthews and Jordan offenses were similar enough to constitute a modus operandi.[3]

CONCLUSION
Accordingly, relator's writ application is granted in part. The trial court's ruling admitting the evidence involving the attempted robbery/murder of Leonard Jordan is reversed and remanded for further proceeding consistent with this opinion. The relator's request for a stay order is hereby denied.
WRIT GRANTED IN PART.
NOTES
[1] In the transcript, the court reporter consistently noted the street as "Freret" instead of "Verret," but there is no dispute about the fact that the murder as well as another incident occurred on Verret Street on the Westbank and not Freret Street uptown.
[2] The police report reflects that Cook and Haynes were arrested for possession of stolen property; they apparently were never implicated in the actual robbery.
[3] In any event, when considering whether offenses should be severed, the concept of separate and distinct relates to whether a jury will be able to keep the evidence relating to each separate and render separate verdicts, arguably a different issue from whether the methodology of each crime is similar.