# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-1510

STATE OF LOUISIANA

VERSUS

JAMES E. RAMSDELL

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR974-07
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**CONVICTIONS AFFIRMED. ARMED ROBBERY SENTENCE AFFIRMED AS AMENDED.**

David W. Burton
District Attorney
Richard A. Morton
Assistant District Attorney
Post Office Box 99
DeRidder, LA  70634
(337) 463-5578
COUNSEL FOR APPELLEE:
      State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, LA  70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
      James E. Ramsdell

AMY, Judge.

The defendant was convicted of first degree murder, conspiracy to commit first degree murder, armed robbery, aggravated burglary, theft of a firearm, and theft of movable property over five hundred dollars. The trial court vacated the defendant's aggravated burglary conviction, and he was sentenced on the remaining charges. The defendant appeals his armed robbery conviction as a violation of the prohibition against double jeopardy. Further, he challenges the sufficiency of the evidence used to convict him of first degree murder. The defendant also argues that the trial court erred in failing to grant several motions for mistrial. For the following reasons, we affirm the defendant's convictions, and affirm the defendant's sentence for armed robbery as amended.

## Factual and Procedural Background

This matter involves the October 9, 2007, shooting death of John "Jack" Mayeaux. It is alleged that the defendant, James E. Randall, shot and killed Mr. Mayeaux, and then, with the help of two accomplices, Terry Clarkson and D.B.[1], stole some of the victim's movable property, including a four-wheeler, money, several guns, ammunition, and tools.

The defendant was indicted by a grand jury with first degree murder, a violation of La.R.S. 14:30; conspiracy to commit first degree murder, violations of La.R.S. 14:26 and 14:30; armed robbery, a violation of La.R.S. 14:64; aggravated burglary, a violation of La.R.S. 14:60; theft of a firearm, a violation of La.R.S. 14:67.15; and theft of movable property over $500.00, a violation of La.R.S. 14:67(B)(1). Following a jury trial, the defendant was found guilty as charged.

---

[1] In accordance with Uniform Rules, Courts of Appeal, 5-2, initials will be used to "ensure the confidentiality of a minor who is a party to or whose interests are the subject matter in the proceedings[.]"

Following his convictions, the defendant filed a Motion to Set Aside Verdict of Jury, arguing that his convictions for first degree murder in addition to armed robbery and armed burglary violated the prohibition against double jeopardy. The trial court granted the motion and vacated his conviction for aggravated burglary. The defendant was subsequently sentenced on the remaining convictions as follows: life imprisonment without the benefit of parole, probation or suspension of sentence for first degree murder; thirty years imprisonment at hard labor for criminal conspiracy to commit first degree murder; one hundred four years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for armed robbery; ten years imprisonment at hard labor without benefit of parole, probation or suspension of sentence, and a fine of $1,000.00 for theft of firearms, and; ten years imprisonment at hard labor for theft of movable property over $500.00. The trial court ordered the sentences to run consecutively.

The defendant appeals, asserting that the trial court erred in failing to grant his Motion to Set Aside Verdict of Jury regarding his armed robbery conviction, and in denying his motions for mistrial. The defendant also questions the sufficiency of the evidence used to convict him of first degree murder.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent regarding the sentence imposed for armed robbery.

The trial court sentenced the defendant to serve one hundred four years imprisonment at hard labor for the armed robbery conviction. At his hearing on the

2

Motion to Set Aside the Jury Verdict, the trial court stated that the penalty for "armed robbery with a firearm carries a maximum of a 104 year sentence with the 99 year plus the five-year firearm enhancement."

Under La.R.S. 14:64, the maximum sentence for armed robbery is ninety-nine years imprisonment at hard labor. However, under La.R.S. 14:64.3, "[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence." To invoke the provisions of La.R.S. 14:64.3, the statute must be charged in the bill of information or indictment. *State v. Daniels*, 03-1621 (La.App. 3 Cir. 5/12/04), 873 So.2d 822, *writ denied*, 04-1802 (La.11/24/04), 888 So.2d 227.

In this case, the State did not cite La.R.S. 14:64.3 nor set forth that the crime of armed robbery was committed with a firearm in the indictment. As noted above, the first and only time enhancing the armed robbery sentence was mentioned was by the trial judge, not the State, during the defendant's post-verdict motion hearing. Since the trial court cannot trigger enhancement on its own, we find that the trial court lacked authority to impose the enhanced sentence. The maximum sentence for armed robbery in this present matter is ninety-nine years imprisonment at hard labor. La.R.S. 14:64. As such, the trial court's one hundred four years sentence was illegally excessive. *State v. Jacobs*, 08-702 (La.App. 3 Cir. 2/4/09), 2 So.3d 1289. Accordingly, we reverse the trial court's inclusion of the five year enhancement and otherwise affirm the defendant's sentence for armed robbery as amended.

*Sufficiency of the Evidence*

The defendant argues that the evidence adduced at trial was insufficient to support his first degree murder conviction. In *State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580, a panel of this court discusses the standard for insufficiency claims as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d. 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983).

First, the defendant contends that there was insufficient evidence to establish beyond a reasonable doubt that he shot the victim. Specifically, the defendant challenges the credibility of D.B.'s testimony identifying the defendant as the shooter. He contends that D.B.'s testimony and statements to police were inconsistent.

Here, first degree murder is defined as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of certain felonies including, in this case, armed robbery and aggravated burglary. La.R.S. 14:30. The State bears of the burden of proving those elements, along with the burden to prove the identity of defendant as the perpetrator. *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So.2d 853.

4

The record reveals that D.B. was first questioned by Officers Jeanne Faciane and Janet Beebe on October 11, 2007. In that interview, D.B. denied having any knowledge of the victim's murder. Four days later, D.B. was interviewed a second time, by different officers, wherein he reported that the defendant shot and killed the victim. On May 13, 2008, D.B. gave a third statement to Jim McCarty with the district attorney's office and again identified the defendant as the shooter.

The defendant argues that D.B. made statements to officers that he closed his eyes when the victim was shot, but testified at trial that he saw the defendant shoot the victim. At trial, the following exchange took place on D.B.'s cross-examination as he was being questioned about the statements he gave police:

Q   All right. And do you remember what you said immediately prior to the shots being fired in Jack's direction? Do you remember what you said when they asked you if you saw him shoot Jack? Do you remember that?

A   No, sir.

Q   You remember what you said, that you turned around and you closed our eyes? Do you remember saying that?

A   Yes, sir.

Q   You've said more than one time, didn't you?

A   Yes, sir

Q   So you didn't actually see him shoot Jack the first time, did you, sir?

A   Yes, sir.

Q   You did?

A   Yes, sir.

Q   So you weren't telling the truth when you told them you turned around and you closed your eyes?

5

A       I saw him shoot him the first time, that's when I turned around.

D.B. admitted in testimony that he lied to police when he gave his initial statement on October 11, 2007, but related that he subsequently told police the truth and was telling the truth at this trial. The record reveals that the testimony he provided at trial was consistent with the second and third statements he provided to police wherein he related that he saw the defendant shoot the victim and then turned his head.

The defendant also refers to other inconsistencies in D.B.'s statements, regarding who returned the gun to the defendant's car after the shooting. The record indicates that in D.B.'s second statement to police he related that after the shooting, the defendant put the gun back in his car, and then walked towards the victim. In his third statement, D.B. reported that after the shooting, the defendant gave his gun to Clarkson and instructed Clarkson to put the gun in the defendant's car. At trial, D.B. testified that he was not sure who put the gun back in the defendant's car.

James Brown also testified that he met the defendant while in Beauregard Parish Jail. Brown testified that the defendant told him that he was in jail for murdering "a man named Jack." Brown further testified that the defendant mentioned "shooting somebody four times in the chest, twice in the head."

The record reveals that a search warrant was issued to search the defendant's home, based upon the detectives investigation in addition to D.B.'s statements indicating where some of the victim's stolen property and the murder weapon were located. D.B. identified the murder weapon as a gun belonging to the defendant. He further provided a physical description of the gun, relating that it had a broken clip which had been repaired with tape. Mark Herford, a detective with the Beauregard

6

Parish Sheriff's Office, testified that he found the gun described by D.B. in the defendant's backyard where D.B. had indicated it was buried. The gun and shell casings found at the murder scene were sent to the crime lab. At trial, Charles R. Watson, Jr., a forensic scientist at the Louisiana State Police Crime Laboratory, testified that the casings found at the scene matched the gun seized from the defendant's house. John Loftin, the victim's neighbor, testified that the gun seized was the same gun he had sold the defendant. In a statement to police, which was entered into the record, the defendant stated that he owned a .45 Haskell gun but alleged that it had been stolen a month before the murder. The defendant also explained that the gun's clip was broken.

Detective Herford also testified that he searched the defendant's house, looking for certain property believed to be stolen from the victim. He stated that he found a cutting torch and other tools allegedly owned by the victim. He explained that the cutting torch was freshly painted, which was consistent with D.B.'s statement that he helped the defendant paint the torches. Detective Herford also recovered other property allegedly stolen from the victim including a four-wheeler and other tools. Chief Deputy of the Beauregard Sherrif's Office, Joe Toler, testified the he recovered various firearms and ammunition inside the defendant's home where D.B. indicated those stolen weapons would be found.

As the fact finder, a jury makes credibility determinations and may, within the bounds of rationality, accept or reject the witness's testimony; thus on review, a court may impinge on the discretion of the fact finder only to the extent necessary to guarantee the fundamental due process of law. *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, *cert. denied*, 535 U.S. 940, 122 S.Ct 1323 (2002)*, citing State v.*

7

*Mussall*, 523 So.2d 1305 (La.1988). We find that when reviewing the record in a light most favorable to the State, a rational trier of fact could reasonably conclude that the defendant shot Mr. Mayeaux. The jury heard D.B.'s testimony identifying the defendant as the shooter and chose to accept that testimony. The record reveals that while there appear to be inconsistencies in D.B.'s statements, none of these inconsistencies involve the identity of the defendant as the shooter or raise the possibility that someone else committed the crime. "Jurisprudence holds that 'a jury may rely on a single witness's testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence." *State v. Clark*, 00-818, p. 4 (La.App. 3 Cir. 12/6/00), 780 So.2d 418, 421, *writ denied*, 01-992 (La. 3/22/02), 811 So.2d 922, quoting *State v. Bernard*, 98-994, p. 7 (La.App. 3 Cir. 2/3/99), 734 So.2d 687, 691. In brief, the defendant argues that the physical evidence found in his home "could have easily been planted" by D.B. or Clarkson. He also asserts that it is "not inconceivable" that his brother, who was feuding with the victim at the time of his death, was the shooter. However, the defendant does not point to any evidence in the record to support these allegations or expose an irreconcilable conflict between the testimony adduced at trial and the physical evidence. Accordingly, we find that when reviewing the record in a light most favorable to the State, a rational trier of fact could reasonably conclude that the defendant shot Mr. Mayeaux.

The defendant also asserts, in the alternative, that even if it were to be found that he was involved in the murder of Mr. Mayeux, there was insufficient evidence to establish that he intended to rob Mr. Mayeux or burglarize his home because the "robbery/burglary was an afterthought, and took place after Mayeaux was dead."

8

At trial, D.B. testified that the night before the murder, the defendant said "we should kill Jack." He further testified that the defendant expressed that he wanted to kill Mr. Mayeaux "because he wanted his stuff." D.B. related that after the defendant shot Mr. Mayeaux, he, Clarkson, and the defendant entered Mr. Mayeaux's house and stole several firearms and money. D.B. stated that the men stole cash from Mr. Mayeaux and $300.00 in quarters from Mr. Mayeaux's home.

"Louisiana jurisprudence does not distinguish between the armed robbery which occurs before the killing of the victim and the robbery of the victim whom the defendant has already killed." *State v. Goodley*, 01-77, p.10 (La. 6/21/02), 820 So.2d 478, 484. Rather, the determination of whether a murder was committed in the perpetration of a certain felony is whether the murder and the felony form a continuous transaction without a significant break of events. *Id.* Here, on review of the evidence, the record supports a determination that Mr. Mayeaux's murder facilitated the robbery and burglary. D.B. testified that the defendant desired to kill Mr. Mayeaux to effectuate a taking of his belongings. Further, D.B.'s testimony indicates that there was no significant break in the chain of events between the time the shots were fired and the men left Mr. Mayeaux's property.

This assignment of error lacks merit.

*Double Jeopardy*

The defendant asserts that his constitutional guarantees prohibiting double jeopardy were violated by his convictions and sentences for both first degree murder and armed robbery. He contends that because armed robbery was the predicate offense used to convict him of first degree murder, multiple punishments were imposed for what was a single criminal act.

9

The defendant first raised the double jeopardy issue in a Motion to Quash the Predicate Offenses of Armed Robbery and Aggravated Burglary. The trial court denied the motion and the defendant took supervisory writs to this court. The writ was denied stating that the defendant had an adequate remedy on this issue on appeal. *State v. Ramsdell*, 09-994 (La.App. 3 Cir. 8/18/09)(an unpublished writ opinion). Following his convictions, the defendant filed a Motion to Set Aside Verdict of Jury, asserting that his convictions for armed robbery, aggravated burglary, and first degree murder violated his protection against double jeopardy. At the hearing on the motion, the trial court explained that the State was allowed to proceed under alternative underlying predicate offenses for the first degree murder charge because the protection against double jeopardy did not apply until the defendant has been sentenced. However, the trial court noted that "it would be error for me today to sentence him to both first-degree murder and armed robbery and aggravated burglary." Because the defendant was found guilty of both armed robbery and aggravated burglary, the trial court stated that the proper remedy was to vacate the defendant's conviction for the less severely punishable offense, aggravated burglary.[2] Accordingly, the trial court vacated the defendant's conviction for aggravated burglary.

The Double Jeopardy provisions in the state and federal constitutions protect a defendant from both a second prosecution for the same offense and multiple

---

[2] The punishment for aggravated burglary is imprisonment for not less than one nor more than thirty years. La.R.S. 14:60. The punishment for armed robbery is imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64.

punishments for the same criminal act. U.S. Const. amend. V; La.Const. art. 1, § 15; *State v. Doughty*, 379 So.2d 1088 (La.1980). When proof of a felony is an essential element of first degree murder, double jeopardy precludes the conviction and punishment of the defendant for both murder and the underlying felony. *State v. Cox*, 07-774 (La.App. 3 Cir. 3/4/09), 4 So.3d 998, *writ denied*, 08-602 (La. 9/4/09), 17 So.3d 948. However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be convicted and sentenced for each offense without violating the prohibition against double jeopardy. *State v. Williams*, 05-1338 (La.App. 3 Cir. 3/1/06), 924 So.2d 1159, *writ denied*, 06-1471 (La. 12/15/06), 944 So.2d 1284.

As explained above, in this case, the State prosecuted and charged the defendant with first degree murder based upon the underlying offense of armed robbery or aggravated burglary. While in brief the defendant contends that the jury based its first degree murder conviction on the underlying offense of armed robbery, the jury's intent in rendering its verdict, specifically which offense it attributed to fulfill the elements of first degree murder, cannot be discerned from the record before us. Nevertheless, the convictions can be upheld if there is sufficient evidence to support either theory. *Cox*, 4 So.3d 998. Here, it is clear that the defendant's protection from double jeopardy was violated when he was convicted and sentenced to first degree murder, armed robbery, *and* aggravated burglary. However, the trial court imposed the proper remedy by vacating the conviction and sentence for aggravated burglary, the less severely punishable offense. *Doughty*, 379 So.2d 1088; *State ex rel. Adams v. Butler*, 558 So.2d 552 (La.1990); *Cox*, 4 So.3d 998; *State v.*

11

*Pittman*, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748; *State v. Head*, 598 So.2d 1201 (La.App. 5 Cir. 1992).

Additionally, the record supports a determination that under the facts of this case, armed robbery and first degree murder were separate and distinct offenses and thus do not violate double jeopardy. Here, first degree murder requires proof of the specific intent to kill or cause great bodily harm, whereas armed robbery does not. La.R.S. 14:30; La.R.S. 14:64; *See also Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932); *State v. Williams*, 07-931 (La.2/26/08), 978 So.2d 895. Further, the defendant could have been convicted of first degree murder without any proof that an armed robbery occurred.

This assignment is without merit.

*Motions for Mistrial*

The defendant assigns error to the trial court's denial of several motions for mistrial made as a result of prospective jurors' comments in the presence of the jury venire. According to La.Code. Crim.P. art. 775(6), a mistrial may be ordered when "[f]alse statements of a juror on voir dire prevent a fair trial." In *State v. Carmouche*, 01-405, p. 20 (La. 5/14/02), 872 So.2d 1020, 1035 (citations omitted), the supreme court stated:

> The "prejudicial conduct" may include remarks of veniremen during voir dire. However, mistrial is a drastic remedy that is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. A trial court need not order a new trial absent a showing that comments made by a prospective juror affected other jurors or prejudiced the defendant. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. In deciding the correctness of the trial court's voir dire rulings, a reviewing court considers the entirety of the voir dire record.

12

*First Motion for Mistrial*

The defendant's first motion for mistrial was raised during *voir dire*. Counsel for the defendant explained to the trial court that his secretary heard a prospective juror, who had been already been released, tell the victim's daughter "in a tone that could be heard by the venire, 'I knew your father, I'm sorry this happened.'" The defendant moved for a mistrial, asserting that the comment inflamed the jury against the defendant and thus was detrimental or prejudicial to his case. In response, the trial court stated "I'm going to deny the motion for a mistrial, unless you can prove to me a juror or all the jurors were actually prejudiced in some way towards the defendant, Mr. Ramsdell."

The record reflects that the defendant did not contemporaneously object to the trial court's ruling, and under La.Code Crim.P. art. 841, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Accordingly, we will not address the merits of the defendant's argument with regard to this motion, as it is not properly before this court for the first time on appeal.

*Second Motion for Mistrial*

The second motion for mistrial was based upon several statements made by prospective jurors during *voir dire.* The record reveals that prospective juror number 178 related to the trial court that, during a break, he heard a female prospective juror make a comment that the defendant "looked guilty." Another prospective juror, number 5, explained to the trial court that he heard the same comment made "five or six times" by three to four different prospective jurors. Lastly, counsel for the defendant stated to the trial court that another prospective juror "indicated that someone talked about the hanging jail and that in the olden days they would hang

them." The defendant made a motion for mistrial, asserting that it would be impossible to obtain a fair and impartial trial considering those discussions amongst the prospective jurors.

The State opposed the motion, contending that all of the prospective jurors stated to the trial court that if they had heard such statements, it made no impact on how they would serve as jurors if selected. Accordingly, the State maintained that there was no evidence of prejudice to support the motion for mistrial.

The trial court denied the motion, stating that it was clear that some prejudicial statements were made in and/or outside the courtroom, but the question was whether the statements made it impossible for the defendant to obtain a fair trial. The trial court explained that it questioned six prospective jurors about the prejudicial comments; three indicated they had not overheard anything inappropriate, and three indicated that they had overheard something, but the comments had not influenced their opinions or ability to remain fair and impartial in the case.

The trial court denied the motion and stated that it believed the appropriate remedy would be to admonish the jury venire to disregard any remarks it may have heard. It added that it would also instruct the jury venire as to the presumption of innocence and try to assure that the jurors had an appropriate understanding. The trial court further stated that it would give both the State and the defendant an opportunity to individually *voir dire* any of the tentatively accepted jurors.

The record reveals that although the defendant objected to the court's ruling, he did not provide an explanation of how the prospective jurors' remarks affected the jury venire or prejudiced the defendant. The *voir dire* record as a whole does not support a finding that the trial court abused its discretion in denying the defendant's

motion for mistrial. *See Carmouche*, 872 So.2d 1020. The record reveals that the prospective jurors who actually heard the comments responded in the affirmative that their ability to serve as fair and impartial jurors had not been compromised. The defendant further does not provide evidence to the contrary.

*Third Motion for Mistrial*

Lastly, prior to seating the jury, the defendant reurged his motion for mistrial, citing the same grounds as in his second motion for mistrial, and further stating that two prospective jurors indicated that they heard comments contrary to the trial court's admonishment. The record does not indicate what the comments were, however, it does indicate that those two prospective jurors were released from serving on the jury. The trial court denied the motion for mistrial, stating that in addition to showing prejudicial conduct, the Defendant had to show that the conduct made it impossible to obtain a fair trial. Through the questioning of the prospective jurors, the trial court concluded that "it is abundantly clear" ... "that Mr. Ramsdell's right to a fair trial is not impinged by any comments that were made."

Because the defendant cited no ground other than those urged previously, we find that based upon the forgoing reasons, the record does not support a finding that the trial court abused its discretion in denying the defendant's third motion for mistrial.

Accordingly, this assignment of error is without merit.

### DECREE

For the foregoing reasons, the defendant's convictions are affirmed. The defendant's armed robbery sentence is affirmed as amended.

**CONVICTIONS AFFIRMED. ARMED ROBBERY SENTENCE AFFIRMED AS AMENDED.**