# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-175

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL KELLY STEVENS**

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 09-2688
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Bradley R. Burget**
**District Attorney**
**David R. Opperman**
**Assistant District Attorney**
**4001 Carter Street, Suite 9**
**Vidalia, LA   71373**
**(318) 336-5526**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**Post Office Box 2057**
**Natchitoches, LA   71457**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Michael Kelly Stevens**

AMY, Judge.

The defendant, Michael Kelly Stevens, confessed to stabbing the victim, Michael Welch, multiple times in the neck before taking Mr. Welch's belongings. The defendant was subsequently convicted of first degree murder in connection with the death of Mr. Welch, and was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant appeals, asserting that the trial court erred in allowing the State to show the jury an unredacted videotape of his interrogation containing references to the defendant's prior convictions. For the following reasons, we affirm.

## Factual and Procedural Background

The victim, Michael Welch, was in poor health, according to several witnesses. The record indicates that, after no one had heard from Mr. Welch for several days, his brother and a neighbor went to check on him. Mr. Welch's brother testified that, after he used his key to open Mr. Welch's door, he found his brother's body on the living room floor. A subsequent autopsy revealed that Mr. Welch had been stabbed multiple times in the neck. In the course of their homicide investigation, the police learned that the defendant, Michael Kelly Stevens, had been living with Mr. Welch. They also learned that Mr. Welch's truck was missing.

The truck, along with the defendant, was subsequently located in Houston, Texas. According to Beau Beaty, a Harris County Sheriff's Deputy, the defendant was either asleep or passed out in the truck in a closed public park. Deputy Beaty further testified that, when he attempted to take the defendant into custody, the defendant jumped into the Houston Ship Channel and had to be fished out by other deputies.

Officers from the Vidalia Police Department and the Concordia Parish Sheriff's Office interviewed the defendant in Houston. During that interview, the defendant confessed that, after Mr. Welch refused to let the defendant borrow his truck, he stabbed Mr. Welch and took Mr. Welch's truck and the cash from Mr. Welch's wallet. The defendant also made unsolicited statements concerning his status as a parolee and his parole officer. The defendant's motion in limine seeking redaction of these statements was denied. A copy of the defendant's videotaped statement was submitted into evidence. A grand jury later indicted the defendant for first degree murder, a violation of La.R.S. 14:30, in connection with the death of Mr. Welch. The State chose not to seek the death penalty.

After a jury trial, the defendant was convicted of first degree murder. The trial court subsequently sentenced the defendant to life imprisonment, without the benefit of probation, parole, or suspension of sentence.

The defendant appeals, asserting as his sole assignment of error that the trial court erred in denying his "pre-trial motion *in limine* to prohibit the use at trial of any evidence of other crimes or back [sic] acts."

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

*Other Crimes Evidence*

In his sole assignment of error, the defendant complains that the trial court erred in allowing "other crimes" evidence to be used at trial.[1] After the State filed

---

[1] To the extent that the defendant's assignment of error contends that the trial court erroneously admitted evidence of other crimes committed by the defendant immediately before the murder or

its notice of intent to use evidence of other crimes, the defendant filed a motion in limine. Therein, the defendant sought to prohibit the introduction of any statement regarding the defendant's criminal history, probation, arrests or charges as well as any "allusion to being on felony probation, a probation officer, or any other statement which referred to a prior criminal history." The defendant specifically requested that instances in his videotaped interrogation where he referred to his parole officer or being on parole should be redacted. The defendant's attorney argued that those statements were prejudicial and expressed her concern that the State would attempt to discuss the defendant's prior crime in detail. After a hearing, the trial court denied the motion in limine, finding that the statements were "unsolicited" and therefore admissible.

An unredacted copy of the defendant's videotaped statement was played at the trial. Therein, the defendant made several references to his status as a parolee or to his parole officer.[2] With one exception, the defendant's references to his status as a parolee or to his parole officer were unsolicited by questions from the investigators. At one point, one of the investigators questioned the defendant

during his flight to Houston, he has failed to brief those issues and they are therefore deemed abandoned. See Uniform Rules—Courts of Appeal, Rule 2-12.4. We further note that the defendant relied on several of those instances in his closing argument, including taking Mr. Welch's money and his truck, being involved in a hit-and-run accident, purchasing crack cocaine, and using various illegal drugs.

[2] A transcription of the videotaped statement reveals that, at one point, the defendant stated that "Todd Gray is my parole officer." Later, he stated:

> [The victim] let me live with him. You know, that was my parole address. And when I got released in 2007 I paroled to Linus Wilkerson's house. They let me parole to Linus Wilkerson's house first. . . . I mean, I used his address when I stayed here when I came here, you know, he was a good dude and it killed me when his wife passed away.
>
> When she passed away, as a matter of fact, I was there when she passed away and he - - when I drove up to report, me and Todd Gray.

Further, the defendant stated, "I mean, I've been locked up, I been in plenty of fights, but I ain't never, you know, went and get something out of the wreck yard [sic]. . . . I didn't want to get me a rod or something and go stab them."

about one of his references to being involved in fights while in jail.[3] The defendant also discussed his actions after he stabbed Mr. Welch, including taking money from Mr. Welch's wallet, taking his truck, his involvement in a "hit-and-run" accident, and multiple instances of illegal drug use.

When the videotape of the defendant's statement was played at trial, the defendant's attorney objected to its introduction "subject to the same objection we previously made." The trial court overruled the objections. The trial court also denied the defendant's motion for new trial, which was based, in part, on the admission of "other crimes" evidence.

Louisiana Code of Evidence Article 404(B)(1) addresses the admissibility of evidence of other crimes, wrongs, or acts. It states:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

When other crimes evidence is offered for a permissible purpose, the State must provide the defendant with notice that it intends to offer such evidence and is required to prove that the defendant committed those acts by clear and convincing evidence. *State v. Blank*, 04-204 (La. 4/11/07), 955 So.2d 90, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494 (2007). Even where other crimes evidence is relevant, the probative value of the unrelated offenses must be weighed against their possible prejudicial effect. *Id.*

---

[3] According to the transcript, one of the investigators asked the defendant, "[w]hen you've gotten into fights you said in jail and what have you, what's ever happened when you get in fights, do you just get angry and go to swing at people?"

4

However, the erroneous admission of other crimes evidence is subject to a harmless error analysis. *State v. Ridgley*, 08-675 (La.App. 5 Cir. 1/13/09), 7 So.3d 689, *writ denied*, 09-374 (La. 11/6/09), 21 So.3d 301; *State v. Crandell*, 43,262 (La.App. 2 Cir. 6/18/08), 987 So.2d 375, *writs denied*, 08-1582, 08-1659 (La. 5/27/09), 5 So.3d 139, 140, *cert. denied*, 78 U.S. 3175, 130 S.Ct. 183 (2009). An error is harmless where the verdict actually rendered is surely unattributable to the error. *Crandell*, 987 So.2d 375. Reversal is only required where there is a reasonable possibility that the evidence might have contributed to the verdict. *Ridgley*, 7 So.3d 689.

With regard to the defendant's statements concerning his status as a parolee, the trial court's admission of those statements, even if erroneous, was harmless. The defendant was charged with first degree murder, a violation of La.R.S. 14:30. At trial, the State contended that the defendant was guilty of first degree murder because the murder was committed during the commission of a robbery. The defendant argued that a responsive verdict of manslaughter or second degree murder was appropriate. He contended that this was either a "heat of passion" crime committed during an argument between two roommates or that his alleged intoxication negated any specific intent. After approximately an hour of deliberation, the jury returned a verdict of guilty of first degree murder.

First degree murder is defined as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration of or attempted perpetration of certain listed felonies, including armed robbery, first degree robbery, second degree robbery, and simple robbery. La.R.S. 14:30(A)(1). The determination of whether a murder was committed during the perpetration of a certain felony depends not on the order of events, but

5

on whether the "the murder and the felony form a continuous transaction without a significant break of events." *State v. Ramsdell*, 09-1510, p. 9 (La.App. 3 Cir. 10/6/10), 47 So.3d 78, 84. Thus, so long as the course of events forms a continuous transaction, it is not necessary that the robbery occur before the killing of the victim. *Id.*

Here, the record supports a conclusion that the defendant killed Mr. Welch in order to take his belongings. Although the revelation that the defendant was a parolee may have cast him in a bad light, it was not so prejudicial as to have affected the verdict. We note that, other than the statements contained in the defendant's videotaped statement, the State did not elicit any testimony regarding the defendant's previous conviction or status as a parolee. The State made no reference to the subject matter of the defendant's prior conviction. Further, although contained within the primary evidence offered by the State, the statements were vague and do not indicate for which crime (or crimes) the defendant had been previously convicted. *See Crandell*, 987 So.2d 375.

The State offered overwhelming evidence that the defendant killed Mr. Welch by stabbing him in the neck and that the defendant also robbed Mr. Welch. As previously discussed, the State offered the defendant's videotaped statement wherein he stated that he had been staying with Mr. Welch and helping him out around the house. The defendant claimed that he had taken several pills on the day of the murder. He said that he wanted to visit his son, who lives in Texas, and asked to borrow Mr. Welch's truck. According to the defendant, Mr. Welch refused to let him borrow the truck.

The defendant claimed that, while they were arguing over the use of the truck, Mr. Welch picked up a steak knife and cut him on the top of the head. He

stated that he took the knife from Mr. Welch and "slashed" at his neck. Further, the defendant claimed that he did not remember inflicting multiple wounds on Mr. Welch. The defendant stated that, after he stabbed Mr. Welch, he changed out of his bloody shorts and took money from Mr. Welch's wallet and the truck. According to the defendant, he spent Mr. Welch's money on crack cocaine and alcohol, sold Mr. Welch's tools for alcohol, and rear-ended another vehicle with Mr. Welch's truck.

We also note that the defendant contended that his intoxication negated the specific intent required for a finding of guilty of first degree murder, and that the jury was able to consider the defendant's videotaped statements that he was intoxicated from taking pills at the time of the offense. Further, the jury could consider whether this was an offense which occurred in a "sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection," thus warranting a verdict of manslaughter. *See* La.R.S. 14:31(A)(1).

In addition to the defendant's videotaped confession, the State's witnesses contradicted several of defendant's claims that tended to minimize his culpability for the crime. Contrary to the defendant's assertion that he only stabbed Mr. Welch once, Dr. Karen Ross, the forensic pathologist, testified that Mr. Welch suffered a nine-inch long wound on his neck. According to Dr. Ross, the wound was actually composed of at least four or five different wounds and was between 2¾ - 3 inches deep. It severed Mr. Welch's left carotid artery and jugular vein and separated his hyoid bone from the cartilage in his neck.

David Hedrick, an investigator with the Concordia Parish Sheriff's Office, testified that, although the defendant claimed that Mr. Welch cut him on the top of

7

the head with a steak knife, he could find no evidence of injury to the defendant's head. Further, several witnesses testified that Mr. Welch was in such poor health that he could barely walk and could not bathe himself. Those witnesses, including his home health aide, expressed incredulity that Mr. Welch would have had the capacity to "lunge" at the defendant and cut him on the top of the head.

Based on our review of the record, we find that any error in admitting the statements referring to the defendant's status as a parolee or to a parole officer is harmless. This assignment of error is without merit.

## DECREE

For the foregoing reasons, we affirm the defendant's convictions and sentence.

**AFFIRMED**.