# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-663 consolidated with 22-664**


**STATE OF LOUISIANA**

**VERSUS**

**ROBERT CROOMS, JR.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 63022 C/W 63023
HONORABLE THOMAS JAMES FREDERICK, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GUY E. BRADBERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.


**AFFIRMED.**

**Donald D. Landry**
**District Attorney**
**Lauren M. Hue**
**Assistant District Attorney**
**15th Judicial District Court**
**100 N. State Street, Ste. 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P. O. Box 52988**
**Shreveport, LA 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT:**
    **Robert Crooms, Jr.**

**BRADBERRY, Judge.**

On April 24, 2018, Defendant, Robert Crooms, Jr., was charged by bill of indictment with the first degree murder of Eric Stansbury, in violation of La.R.S. 14:30(A)(1). In a separate bill of indictment, Defendant's brother, Kenton Crooms, was charged with principal to first degree murder, in violation of La.R.S. 14:24 and 14:30. On June 9, 2021, the trial court granted the State's motion to join the defendants for trial and to consolidate the cases in the lower trial court docket number.

On January 13, 2022, Defendant filed a motion to quash for improper venue and a memorandum in support. Defendant contended venue was improper in Vermilion Parish because the discovery provided by the State showed the killing occurred in Texas when the victim was shot multiple times in the head. The State filed an opposition arguing that venue was proper in Vermillion Parish because an element of the first degree felony-murder was committed in Vermillion Parish. On March 11, 2022, the trial court convened for a hearing, and the State and Defendant submitted the matter on the memoranda filed and evidence entered by the defense. On March 31, 2022, the trial court granted the motion to quash and provided written reasons.[1] The State now appeals the trial court's ruling. Based on the following, we affirm the ruling on the motion to quash.

## FACTS

Because there is no testimony regarding the events at issue, we have primarily taken the facts from Detective Trent Guidry's police narrative, unless

---

[1]After Defendant's motion to quash was granted, Kenton Crooms also filed a motion to quash for improper venue, which the trial court granted. In addition to the instant appeal, the State appealed the trial court's granting of Kenton's motion to quash. That appeal is lodged as 22-664 and a separate judgment is being rendered by us on this date.

otherwise indicated. On October 25, 2016, the Abbeville Police Department ("APD") was notified of a suspicious vehicle parked on a vacant lot at 700 East Oak Street, and at approximately 5:39 p.m., officers arrived to discover a blue Ford F-250 with no license plate parked on the property. Because the property was in the process of being seized by the APD, officers contacted a wrecker service to remove the truck from the property. The wrecker driver unlocked the truck in accordance with towing procedure. Once the truck was unlocked, officers discovered the body of an unresponsive white male in the passenger side covered by trash bags, a black raincoat, and a piece of cardboard. The victim's body was laying on his right side, with his head placed on the center floorboard, his back and hips on the passenger floorboard, and his legs on the passenger seat. The victim was wearing socks but no shoes, and only one brown work boot was found in the truck. There was a large amount of blood throughout the truck, including on the driver and passenger seats, on the driver and passenger side doors and floorboards, and on the inside of the front passenger side windshield. Detectives observed a bullet hole on the inside of the passenger side door, but no exit hole was located. After the detectives removed the victim's body from the truck, they noted rigor mortis had already set in, and there was livor mortis on the right side of the victim's torso. Detectives searched the victim's pockets, and a driver's license identified him as Eric Stansbury of Vidor, Texas. It was determined he was the owner of the blue Ford F-250.

The autopsy was conducted on October 26, 2016. The autopsy lists the victim's time of death as having occurred at 7:17 p.m. on October 25, 2016, despite the APD's discovery of the body at approximately 5:39 p.m. The victim's body showed signs of a struggle, as the medical examiner documented there was

2

blood on his hands, blood and dirt under his fingernails, and a partially separated nail bed. The victim had been shot three times: twice in the head and one time in the right mid thigh. An entry wound was observed near the victim's right temple with an exit wound across on the left side of his face. A second entry wound was observed in the back of the victim's head, and a projectile was recovered from the victim's brain. The medical examiner determined the victim's cause of death was gunshot wounds to the head and right thigh.

During their investigation, detectives spoke with Travis Sonnier. Mr. Sonnier lived on East Oak Street, where the victim's body was found, and he indicated he had witnessed two trucks pull into the yard of the vacant lot between 11:45 a.m. and 12:00 p.m. on October 25, 2016. Five minutes later, he saw one of the trucks speed off. Mr. Sonnier described the truck that sped off as a big truck with dark tinted windows. There is no indication that Mr. Sonnier heard gunshots during the five minutes both trucks were at 703 East Oak Street.

The APD spoke with the victim's brother, Troy Stansbury, who gave information regarding his brother's very specific daily morning routine. Every morning before work, the victim left his house in Vidor, Texas, shortly after 4:00 a.m. to go to the Criss Cross gas station to eat breakfast. The gas station was located on Crocket Road near Interstate 10 in Beaumont, Texas, approximately ten to fifteen minutes from the victim's house. When dressing for work, the victim wore blue jeans tucked into his work boots with a long-sleeved shirt, a cowboy hat, a belt with two knife holsters, and gold rings on four of his fingers. On his 9:00 a.m. break, the victim always called his wife, Darla, to check in. When Darla did not hear from the victim at any point on October 25, 2016, she attempted to call him, but his phone was turned off.

An anonymous caller identified the Crooms brothers as suspects in the killing, and Detective Guidry began investigating them. He looked through Defendant's Facebook profile and watched a recent video of Defendant, Kenton, and an unidentified white female standing in front of a Dodge truck. The video was recorded on October 25, 2016, at 2:44 a.m. in Lake Charles, Louisiana.

Another anonymous source reported that Defendant had killed a man in Texas and drove his body back to Louisiana. The source identified the Crooms brothers as being together at the time of the killing and knew that Defendant had been driving a Dodge truck at the time.[2]

The investigation also revealed the cell phones belonging to Defendant and the victim were together from 4:00 a.m. to 7:39 a.m. before the victim's cell phone was turned off in Texas near the Louisiana border. Using GPS coordinates, the detectives determined the victim did not travel west towards Beaumont to go to the Criss Cross gas station.[3] Instead, the victim's cell phone was never more than six miles from his house in Vidor, Texas, for a few hours before it began traveling eastward. With the assistance of the Louisiana State Police, the APD learned the victim's Ford F-250 was captured by a license plate reader at 7:58 a.m. in Lake Charles, Louisiana, traveling east on Interstate 10. A Dodge truck was seen closely following behind.

Detectives interviewed Shaekeria Judge, who volunteered that she had called Defendant to ask if she could borrow his truck. According to Ms. Judge, Defendant arrived at her house on October 25, 2016, between 11:30 a.m. and 12:00

---

[2]Detectives learned through their investigation that the Dodge truck had been rented by Defendant's wife in Houston.

[3]Detectives also reviewed surveillance from the Criss Cross gas station and were unable to find any footage of the victim's truck entering the parking lot on October 25, 2016.

p.m. in his Dodge truck. Defendant took a black trash bag containing clothes out of the truck before leaving with another individual. Ms. Judge did not mention seeing the victim's Ford F-250.

The APD began investigating another shooting incident Defendant was involved in. During that investigation, officers located a bag containing several items which had belonged to the victim, including paperwork bearing the victim's name, gold rings, and a watch that were all covered in blood. Some of Defendant's personal items were found in the same bag. The officers later located tools, straps, chains, and toolboxes that were determined to have belonged to the victim, and the officers found clothes, which were covered in dried blood in the toolboxes.

Another anonymous source called the APD to give a statement. The source, who claimed to be related to the Crooms brothers, stated that Kenton told him the brothers were traveling with a white female when their truck ran out of gas. The source was told Defendant had been "tweaking" when he killed a man who stopped to help them while in Texas. The source knew the victim had been shot in the leg—a fact which had not been disclosed to the public and was only known by the investigators and medical examiner.

The Orange County Sheriff's Office contacted the APD with information regarding the unidentified white female who traveled with the Crooms brothers in Texas. According to the Orange County Sheriff's Office, one of their deputies picked up the white female, identified as Amber Lyn Lee, as she was walking on the side of the interstate on October 25, 2016, and dropped her off in Louisiana.

Ms. Lee later advised the APD that she wanted to give a statement about the events. Ms. Lee stated that she traveled with Defendant and Kenton from Abbeville, Louisiana, to Houston, Texas, on October 24, 2016. They drove back to

5

Louisiana the night of October 24, 2016, into the early morning hours of October 25, 2016. When they reached Lake Charles, Defendant decided to go back to Houston, and while traveling in Texas, their Dodge truck ran out of gas. Defendant pulled off Interstate 10 onto a frontage road where he parked the truck under an overpass. The overpass was near where the victim drove on his way to work every morning. The victim pulled behind Defendant's truck and offered to bring Defendant to get gas. Defendant exited his truck and left in the passenger seat of the victim's truck to get gas, leaving Ms. Lee and Kenton in the stranded Dodge truck. After approximately an hour, Defendant returned alone driving a vehicle Ms. Lee described as a SUV and spoke with Kenton. When Ms. Lee approached the Crooms brothers, Defendant told her to return to the Dodge truck. The Crooms brothers left in the vehicle Defendant had arrived in and returned two hours later wearing different clothing and acting differently than earlier. The Crooms brothers had returned with gas. After Ms. Lee refused Defendant's sexual advances, she was told to walk back to Louisiana. Ms. Lee witnessed the Crooms brothers drive away in separate trucks, but she did not see the victim. Ms. Lee showed the detectives where their truck had run out of gas on the side of the interstate using Google Earth.

Detectives spoke with Matthew Buckelew. Mr. Buckelew told the detectives the Crooms brothers had gone to his house, though he could not provide an exact date, to ask if Mr. Buckelew had any gas. Kenton was driving a dark Dodge truck whereas Defendant was driving a dark Ford F-250. Mr. Buckelew stated that Kenton got out of the truck he was driving. Defendant remained in the truck he was driving, but it appeared he was alone. Mr. Buckelew remembered Defendant was wearing a black hooded jacket or raincoat. Detective Guidry noted

6

in his police narrative this statement reminded him that a black raincoat covered the victim's body.

Finally, the detectives spoke with Defendant's estranged wife, Shartamia Crooms, who advised that Defendant was supposed to pick her up at 4:00 a.m. on October 25, 2016, in Houston. Defendant did not arrive, and Mrs. Crooms spoke to Kenton at approximately 5:00 or 5:30 a.m. Kenton told Mrs. Crooms they were stranded on the side of the road, that someone had picked up Defendant to get gas an hour ago, and that he was getting worried.

Detective Guidry concluded his police narrative on November 23, 2016, one month after the APD's discovery of the victim, by stating the victim's missing boot, cowboy hat, cell phone, truck keys, and Texas license plates had not been located.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find the present appeal was filed by the State seeking review of the trial court's granting of Defendant's motion to quash. This court has found that an error patent review is required in such cases. *State v. Nguyen*, 14-639 (La.App. 3 Cir. 11/5/14), 150 So.3d 562; *State v. Jones*, 13-395 (La.App. 3 Cir. 11/6/13), 130 So.3d 1; and *State v. Brignac*, 10-276 (La.App. 3 Cir. 10/6/10), 49 So.3d 960. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In its sole assignment of error, the State contends the trial court erred in granting Defendant's motion to quash for improper venue. Before discussing the arguments made in the trial court and on appeal, we will set forth the applicable

7

law regarding jurisdiction and venue. In *State v. Brooks*, 20-454, pp. 5-6 (La.App. 1 Cir. 2/19/21), 320 So.3d 419, 422-23, the first circuit discussed venue as follows:

> Venue is not an essential element of the offense; rather, it is a jurisdictional matter. See La. Code Crim. P. arts. 611A & 615. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. **State v. Ford,** 2017-0471 (La. App. 1st Cir. 9/27/17), 232 So.3d 576, 584, writ denied, 2017-1901 (La. 4/22/19), 268 So.3d 295. The State bears the burden of proving venue by a preponderance of the evidence. La. Code Crim. P. art. 615; **State v. Parker,** 2012-1550 (La. App. 1st Cir. 4/26/13), 116 So.3d 744, 749, writ denied, 2013-1200 (La. 11/22/13), 126 So.3d 478.
>
> Venue is a factual question and, on appeal, review is limited to whether the State submitted some evidence of proper venue. **State v. Skipper,** 387 So.2d 592, 594 (La. 1980). As such, review of the issue on appeal is not concerned with weighing the sufficiency of the State's evidence. **State v. Eason,** 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So.3d 61, 72. When a trial court rules on a motion to quash, factual and credibility determinations should not be reversed on appeal in the absence of a clear abuse of the trial court's discretion. However, a trial court's legal findings are subject to a *de novo* standard of review. **State v. Williams,** 2018-1795 (La. App. 1st Cir. 5/31/19), 2019 WL 2317162 at \*5 (unpublished), writ denied, 2019-01028 (La. 1/14/20), 291 So.3d 682; see also **State v. Love,** 2000-3347 (La. 5/23/03), 847 So.2d 1198, 1206; **Eason,** 293 So.3d at 72.

Louisiana Code of Criminal Procedure Article 611 governs the jurisdiction and venue of criminal trials and provides, in pertinent part:[4]

> A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.
>
> B. If the offender is charged with the crime of first or second degree murder and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found.

---

[4]This is the version of La.Code Crim.P. art. 611 which was in effect at the time of the offense in 2016. Louisiana Code of Criminal Procedure Article 611 was subsequently amended, by Acts 2017, No. 164, § 1 and Acts 2018, No. 125, §1.

> Louisiana Code of Criminal Procedure Article 611(A) does not refer to *any* act related to the offense; it refers to "acts constituting an offense" or the "elements of an offense." Where a body is found, *and it is unknown where the actual killing took place*, proper venue is in the parish where the body of the victim was discovered.

*Brooks*, 320 So.3d at 423; *see State v. Surratt*, 05-1406 (La.App. 3 Cir. 6/7/06), 932 So.2d 736, *writs denied*, 06-2100, 06-2102 (La. 6/1/07), 957 So.2d 165. Further, "the place where the effect of the criminal conduct occurs is an important consideration in determining whether the charged criminal acts have substantial contacts with the venue chosen for prosecution." *State v. Hayes*, 01-3193, p. 7 (La. 1/28/03), 837 So.2d 1195, 1199 *(per curiam).*

## State's Arguments in the Trial Court

In its opposition to the motion to quash, the State argued venue was proper under La.Code Crim.P. art. 611(A) because "the murder was confected during the course and scope of any variety of robbery." The State did not dispute or submit any evidence to contradict Defendant's assertion that the killing took place in Texas:

> Using the State's open file documents, Defendant argues improper venue where the State's file sets out facts which establish the victim Erick [sic] Stansbury had to have been shot within the state of Texas, and very likely died in Texas given the nature of the wounds, and suggests that this information ends the inquiry. The State asserts this was not just a kill and dump, and this continuing transaction is not completed until the Defendant leaves with Erick [sic] Stansbury's property and abandons him in his truck in Vermilion Parish.

Rather, the State argued an element of the offense of first degree felony-murder was perpetrated in Vermilion Parish, thereby making venue proper under La.Code Crim.P. art. 611(A).

The State asserted the "taking" element of robbery began in Texas with the taking of the victim's truck and ended in Vermilion Parish with the removal of

9

items from the victim's body and truck. The State noted Defendant was identified as driving the victim's truck in Texas by Ms. Lee and in Louisiana by the license plate readers without view of the victim. Officers located several items belonging to the victim during another investigation involving Defendant, and a .38 caliber gun with DNA implicating Defendant and the victim as contributors was also recovered. At the hearing on the motion to quash, the State did not call any witnesses, present oral argument, or offer any evidence. The only evidence offered was by the defense to show the killing more than likely occurred in Texas.

**Trial Court's Ruling**

On March 31, 2022, the trial court granted the motion to quash in written reasons:

> The defendant argues that venue in Vermilion Parish, Louisiana is improper because the evidence produced by the State through discovery "shows that the victim suffered gunshot wounds to the head causing immediate death and that this occurred within the State of Texas. In response, the State argues that while the killing may have taken place in Texas, the robbery element of [First] Degree Murder was not completed until the victim's property was removed from his person and his truck, and that this last element occurred in Vermilion Parish, which is where the victim's body was found.

> . . . .

> The State first argues that the "taking" element of the crime of robbery occurred when the defendant took the victim's truck. There is no dispute that this taking took place within the State of Texas. As noted by the State, "Defendant is identified as driving the victim's truck without view of the victim . . . in Texas. . . ." With respect to the victim's truck, the taking clearly occurred in Texas. The State next argues that the "taking" was a continuing act that did not end until items were removed from the victim's person and from his truck, and that this occurred in Vermilion Parish. With regard to the other items that were removed from the victim's person and his truck, no evidence has been presented as to exactly when, where, and/or by whom those items were taken.

> . . . .

10

If other items were removed from the person of the victim immediately following the killing, then these acts most assuredly occurred within the State of Texas, or at least outside the physical boundaries of Vermilion Parish. If these items were in fact removed from the person of the victim in Vermilion Parish, that would constitute a completely separate act occurring several hours after the killing. Thus the killing would not have occurred during the perpetration of a robbery; rather, the taking would have occurred subsequent to the killing. Either way, the State's argument that the removal of these items (taking) extended the commission of the homicide to include Vermilion Parish must fail.

Additionally, there has been no evidence presented or produced which tends to prove that this defendant participated in the removal of these items, whether that be in Texas or in Vermilion Parish. The Court finds that the State shoulders the burden of proof, and that it has failed to meet its burden by proving no proof as to when, where and by whom the items were removed.

The Court, therefore, finds that the State has failed to prove, by a preponderance of the evidence, that the crime of [First] Degree Murder occurred within the jurisdictional boundaries of Vermilion Parish, Louisiana. Thus, the defendant's Motion to Quash is granted[.]

## State's Arguments on Appeal

For the first time on appeal, the State argues venue is proper in Vermilion Parish under La.Code Crim.P. art. 611(B), because it cannot be determined where the victim's death occurred. Therefore, according to the State, venue is proper where the victim's body was found. As discussed, if "it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found." La.Code Crim.P. art. 611(B). The State makes three primary arguments under the exception to the general venue rule: (1) there is no conclusive evidence as to the actual time of death; (2) there is no conclusive evidence as to which gunshot was fatal; and (3) the location of the murder was never established. The State concludes that absent a conclusive time of death or physical evidence pointing to the geographical location of where the victim's death occurred, "the trial court

11

could have logically inferred from the location of the vehicle, the time and discovery of the vehicle and body, and the condition in which the body was in, Mr. Stansbury was killed where he was found."

In contrast, defense counsel argues this court should refuse to consider the State's arguments attempting to establish jurisdiction under La.Code Crim.P. art. 611(B) because the State did not make the legal arguments in the trial court. "A legal argument cannot be made for the first time on appeal. Uniform Rules— Courts of Appeal, Rule 1-3." *State v. Perkins*, 07-423, p. 7 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1183, *writ denied*, 07-2408 (La. 5/9/08), 980 So.2d 688.

We find the defense counsel's assertion is correct. At no point in the trial court proceedings did the State rely on the exception in La.Code Crim.P. art. 611(B) to argue that it could not be determined where the killing occurred; rather, the State asserted that irrespective of where the victim was killed, venue was proper under La.Code Crim.P. art. 611(A) because an element of the offense occurred in Vermilion Parish. This is a separate and distinct argument from the argument the State now makes on appeal. Because the State failed to present any evidence establishing that venue was proper under La.Code Crim.P. art. 611(B) in the trial court, it cannot now seek to meet its burden of proof on appeal. Consequently, we find the State's arguments are not properly before this court.

Secondly, the State contends venue is proper in Vermilion Parish pursuant to La.Code Crim.P. art. 611(A). "If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred." La.Code Crim.P. art. 611(A). Therefore, to

12

establish venue, the State was required to prove by a preponderance of the evidence that an element of the offense of first degree felony-murder occurred in Vermilion Parish. La.Code Crim.P. art. 615.

First degree murder is defined as the killing of a human being "[w]hen the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of" certain enumerated felonies, including armed robbery, first degree robbery, second degree robbery, and simple robbery. La.R.S. 14:30(A)(1). As discussed, Defendant asserted in his motion to quash that the State's evidence established the victim was killed in Texas. The State did not contradict that assertion. Instead, the State limited its opposition to its argument that a robbery was perpetrated in Vermilion Parish as part of a continuing and ongoing felony-murder. Therefore, the scope of this court's review is limited to the argument made in the trial court. Uniform Rules—Courts of Appeal, Rule 1-3.

"Louisiana jurisprudence does not distinguish between the armed robbery which occurs before the killing of the victim and the robbery of the victim whom the defendant has already killed." *State v. Goodley,* 01-77, p. 10 (La. 6/21/02), 820 So.2d 478, 484 (citing *State v. Kirkpatrick,* 443 So.2d 546 (La.1983)). The determination of whether a murder was committed during the perpetration of an enumerated felony depends not on the order of events, but on "whether the murder and the felony form a continuous transaction without a significant break of events." *State v. Ramsdell,* 09-1510, p. 9 (La.App. 3 Cir. 10/6/10), 47 So.3d 78, 84. Thus, so long as the course of events forms a continuous transaction, it does not matter whether the robbery occurred immediately before or after the killing of the victim. *Id.*

13

With respect to the victim's truck, Defendant took control of the truck in Texas as detailed in Ms. Lee's statement to the APD and corroborated by the license plate reader in Lake Charles showing the truck pass through Louisiana. Whether the taking occurred immediately before or after the victim was killed is inconsequential. However, it is consequential that the robbery occurred outside the jurisdiction of Vermilion Parish. The State argues Defendant's continued possession of the victim's truck extended the robbery from when Defendant initially exercised control of the truck sometime between 4:00 a.m. and 7:58 a.m. in Texas to when Defendant relinquished control of the truck sometime between 11:30 a.m. to 12:00 p.m. in Vermilion Parish. The State speculates that after the victim's truck was abandoned, Defendant and Kenton took multiple items from the victim's body.

In its ruling, the trial court determined the State's argument failed for numerous reasons. First, the trial court accepted Defendant's unopposed assertion that the victim more than likely died in Texas and found that if items were removed from the victim immediately before or after the victim was killed, then the robbery occurred within Texas. In that same vein, the trial court found the victim's truck was clearly taken in Texas. Second, the trial court found that if items were removed from the victim's body in Vermilion Parish, then that would constitute a separate criminal act occurring several hours after the killing. The trial court determined the course of events did not constitute a continuous transaction. Therefore, the killing did not occur during the perpetration or attempted perpetration of a robbery; rather, the criminal act would have occurred several hours after the killing. The trial court found the State failed to prove by a

14

preponderance of the evidence that the first degree felony-murder occurred within the jurisdictional boundaries of Vermilion Parish.

We find the felony-murder was not a continuous and ongoing transaction as suggested by the State. The evidence establishes the victim was more than likely killed in Texas and Defendant took control of the victim's truck while in Texas. If Defendant took additional items from the victim in Vermilion Parish, that would have occurred hours subsequent to the killing. The State failed to meet its burden of proving proper venue in the trial court. Given that venue is a question of fact and the factfinder's determination is afforded great discretion, we find the State has similarly failed to meet its burden of proving an abuse of discretion in the trial court's granting of Defendant's motion to quash. Accordingly, we affirm the ruling on the motion to quash for improper venue.

## CONCLUSION

The ruling on the motion to quash is hereby affirmed.

**AFFIRMED.**